**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

**NIKE, INC.,**

          **Plaintiff,**

**-vs-**　　　　　　　　　　　　　　　　　　　　**Case No. 6:09-cv-796-Orl-28KRS**

**MORIANGO AUSTIN, GUIDANCE
GROUP, LLC, CHAUNCY OUTLAW,**

          **Defendants.**

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

This cause came on for consideration without oral argument on the following motion:

> **MOTION:** **PLAINTIFF'S MOTION FOR ENTRY OF DEFAULT JUDGMENT AND PERMANENT INJUNCTION (Doc. No. 17)**
>
> **FILED:** **July 21, 2009**

**I. INTRODUCTION.**

Plaintiff Nike, Inc. ("Nike") filed the present action alleging that Defendants Moriango Austin, Guidance Group, LLC, and Chauncy Outlaw, individually and doing business as www.guidancegrp.com and Guidance Group ("Defendants") engaged in the willful, unauthorized sale of unlicensed and counterfeit products bearing Nike's exclusive trademarks. Defendants were served process on June 1 and 2, 2009, and Plaintiff filed proof of service on June 9, 2009. Doc. Nos. 11-13. The Clerk of Court entered defaults against each Defendant on June 25, 2009. Doc. No. 15.

On July 21, 2009, Nike filed the instant motion for default judgment, seeking statutory damages in the amount of $60,000.00 under the Lanham Act, 15 U.S.C. § 1051 *et. seq.*, entry of a permanent injunction prohibiting Defendants and their representatives from further infringement of Nike's trademarks, and other just relief. Defendants have not filed a response to the motion or otherwise appeared in the action.

## II. APPLICABLE LAW REGARDING DEFAULT JUDGMENTS.

A court may enter a default judgment only if the factual allegations of the complaint, which are assumed to be true, provide a sufficient legal basis for such entry. *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) ("The defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law."). Therefore, in considering a motion for default judgment, a court must "examine the sufficiency of the allegations in the complaint to determine whether the plaintiff is entitled to" a default judgment. *Fid. & Deposit Co. v. Williams*, 699 F. Supp. 897, 899 (N.D. Ga. 1988).

"Although a defaulted defendant admits well-pleaded allegations of liability, allegations relating to the amount of damages are not admitted by virtue of default. Rather, the Court determines the amount and character of damages to be awarded." *Miller v. Paradise of Port Richey, Inc.*, 75 F. Supp. 2d 1342, 1346 (M.D. Fla. 1999). If a default judgment is warranted, the court may hold a hearing for the purposes of assessing damages. Fed. R. Civ. P. 55(b)(2); *see also SEC v. Smyth*, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005). However, a hearing is not necessary if a party submits sufficient evidence to support the request for damages. *Id.*

Section 43(c) of the Lanham Act provides for an injunction against another party's commercial use of a trademark if the other's use begins after the mark has become famous and causes dilution of

the distinctive quality of the mark. 15 U.S.C. § 1125(c); *Portionpac Chem. Corp. v. Sanitech Sys., Inc.*, 217 F. Supp. 2d 1238, 1250 (M.D. Fla. 2002).

## III. ALLEGATIONS OF THE COMPLAINT.

Nike alleged that it is a corporation engaged in the manufacture, design, and sale of footwear, apparel, and related accessories. Doc. No. 1 ¶¶ 5, 6. These products bear several marks, including "NIKE," "NIKE AIR," "JUST DO IT," "AIR JORDAN," and "AIR MAX," which marks are sometimes used with arbitrary and distinctive emblems, including one known as the "Swoosh Design," and one known as "Jumpman." *Id.* ¶ 5(a), (b); Doc. No. 18-2. Nike registered these marks and the "Swoosh Design" with the United States Patent and Trademark Office between 1982 and 1995. Doc. No. 1 ¶ 5(b); Doc. No. 18-2. Nike has used these marks continuously since they were registered in connection with its products. As such, these marks are incontestible. Doc. No. 1 ¶ 11.

Nike ensures that products bearing its marks are manufactured to the highest standards of quality. Doc. No. 1 ¶ 11. Because of Nike's longstanding use and large advertising expenditures in support of its marks, Nike's marks have become famous marks as defined in 15 U.S.C. § 1125(c)(1). *Id.* ¶ 12.

Defendants operate an interactive website through which they have distributed, offered for sale and sold shoes bearing exact copies or colorable imitations of Nike's marks. *Id.* ¶ 15.[1] Defendants offer for sale and sell these counterfeit products in interstate commerce, without authorization from Nike, *id.* ¶ 14, thus creating a likelihood of confusion, deception and mistake, *id.* ¶ 20. Nike alleges

---

[1] Nike attached copies of the advertisements for the counterfeit shoes to the complaint.

Defendants acted with actual and constructive knowledge of Nike's trademarks, *id.* ¶ 21, and therefore acted willfully with knowledge of the infringement and unfair competition, *id.* ¶ 25.

**IV. ANALYSIS.**

   *A.   Liability.*

Nike's complaint asserts claims for trademark counterfeiting/infringement under 15 U.S.C. § 1114; unfair competition under 15 U.S.C. § 1125(a) and (d) for false designation of origin and false descriptions and representations in interstate commerce; and unfair competition under Florida's common law. I address only the trademark counterfeiting claim because Nike does not seek additional damages arising from the additional causes of action.[2]

"To prevail on a claim of trademark infringement . . . , plaintiffs must establish: (1) that they possess a valid mark, (2) that the defendants used the mark, (3) that the defendants' use of the mark occurred 'in commerce,' (4) that the defendants used the mark 'in connection with the sale ... or advertising of any goods,' and (5) that the defendants used the mark in a manner likely to confuse consumers." *North Am. Med. Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1211, 1218 (11th Cir. 2008).

After five years of continuous use, the owner of a registered trademark can obtain incontestable status by filing an affidavit affirming that certain statutory requirements have been met. *Wilhelm Pudenz, GmbH v. Littlefuse, Inc.*, 177 F.3d 1204, 1208 (11th Cir. 1999) (citing 15 U.S.C. § 1065). Incontestable status is conclusive evidence of the registrant's right to use the trademark, subject to certain enumerated defenses. *Id.* (citing 15 U.S.C. § 1115(b)). Incontestability narrows,

---

[2] The United States Court of Appeals for the Eleventh Circuit has recognized that "if there is no genuine issue of fact as to trademark infringement, there is none as to unfair competition, either." *Chanel, Inc. v. Italian Activewear of Fla., Inc.*, 931 F.2d 1472, 1475 n.3 (11th Cir. 1991).

but does not eliminate the grounds upon which the trademark's validity may be called into question. *Id.*

By failing to answer the complaint, Defendants admit that Nike registered the marks at issue and have used them continuously for five years or more. This is sufficient to establish the first element of trademark infringement, that the marks are valid.

Also by failing to answer the complaint, Defendants admit that they used the marks in commerce in connection with the sale and advertising of goods.

As to the last element of trademark infringement, "[s]even factors are relevant when determining whether a likelihood of confusion exists: (1) the strength of the plaintiff's mark, (2) the similarity between the plaintiff's mark and the allegedly infringing mark; (3) the similarity between the products and services offered by the plaintiff and defendant; (4) the similarity of the sales methods; (5) the similarity of advertising methods; (6) the defendant's intent . . .; and (7) actual confusion." *Axiom Worldwide, Inc.*, 522 F.3d at 1220 (citing *Alliance Metals, Inc. of Atlanta v. Hinely Indus., Inc.*, 222 F.3d 895, 907 (11th Cir. 2000)).

By failing to answer the complaint, Defendants admit that Nike's marks are strong, and that the marks they used are the same or colorably similar to Nike's marks. The products involved are the same, namely shoes. Defendants also admit that they willfully infringed Nike's marks after having actual and constructive knowledge of the marks. These admissions are sufficient to establish likelihood of confusion.

As such, Defendants are liable for trademark infringement.

**V. DAMAGES.**

Nike seeks an award against each defendant, jointly and severally, in the amount of $60,000.00 in statutory damages, and an injunction prohibiting Defendants, their agents, employees and those acting in concert with them from infringing Nike's marks in the future.

Shaw Ashley, a paralegal with the law firm representing Nike, avers that on or around September 12, 2008, the law firm purchased a pair of Nike shoes from the website located at <http://www.GuidanceGrp.com> via a money order. Ashley Decl. Doc. No. 18-10 ¶ 2. Defendant Austin signed the for the certified mail delivery. *Id*.; Doc. No. 18-12. The law firm received a pair of Nike shoes, a picture of which is Exhibit 3 to Ashley's declaration. Doc. Nos. 18-10 ¶ 2, 18-13. The shipping label reflects that the shoes were shipped by Chauncy Outlaw. Doc. Nos. 18-10 ¶ 2, 18-15. Lori Colbert, the North America Brand Protection Manager for Nike, Inc., confirmed that the shoes were counterfeit. Doc. No. 18-10 ¶ 2; Doc. No. 18-3 ¶¶ 1, 9. Ashley averred that on October 21, 2008, her law firm sent a Cease and Desist letter to Defendant Austin, the registered owned of the www.GuidanceGrp.com website, and Chauncy Outlaw, the person who sent the shoes to the law firm. Doc. Nos. 18-10 ¶ 3, 18-14.

On February 12, 2009, Eric Berger, an investigator hired by Nike, visited the www.GuidanceGrp.com website and observed items advertised for sale with Nike trademarks. Berger Decl. Doc. Nos. 18-7 ¶¶ 3-4, 18-8. Berger purchased a pair of Air Force One Men's shoes, which he sent to Colbert. Doc. Nos. 18-7 ¶ 5, 18-9. Colbert confirmed that the shoes were counterfeit. Doc. Nos.18-7 ¶ 5; 18-3 ¶ 9.

Colbert averred that the www.GuidanceGrp.com website was not authorized to offer for sale or sell Nike shoes or apparel. Colbert Decl. Doc. No. 18-3 ¶ 7. She further averred that Nike has

never licensed the Defendants to manufacture or import any good bearing Nike's trademarked properties. *Id.* ¶ 8. Pictures from the www.GuidanceGrp.com website attached to Colbert and Berger's declarations show products with the following Nike trademarks: "AIR JORDAN,""NIKE," "NIKE AIR," "AIR MAX," "Swoosh Design," and "Jumpman Design." Doc Nos. 18-4 , 18-8.

The Lanham Act permits a plaintiff to elect either actual damages or statutory damages. In a counterfeiting case, a court may award statutory damages of "not less than $500 or more than $100,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." 15 U.S.C. § 1117(c)(1). Statutory damages increase to not more than $1,000,000 per counterfeit mark if a defendant acts willfully. *Id.* § 1117(c)(2).

Nike seeks an award of $10,000.00 for each of the six Nike trademarks infringed by Defendants. Therefore, an award of $60,000.00 is permitted by the Lanham Act based on the evidence of the six marks infringed, and it is within the amount requested in the prayer for relief in Nike's complaint.

The Lanham Act "does not provide guidelines for courts to use in determining an appropriate award." *Louis Vuitton Malletier & Oakley, Inc. v. Veit*, 211 F. Supp. 2d 567, 583 (E.D. Pa. 2002); *Tiffany (NJ) Inc. v. Luban*, 282 F. Supp. 2d 123, 124-25 (S.D.N.Y. 2003)("The statute 'does not provide guidelines for courts to use in determining an appropriate award' and is only limited by what 'the court considers just.'")(internal citation omitted); *see also PetMed Express, Inc. v. MedPets.Com, Inc.*, 336 F. Supp. 2d 1213, 1217 (S.D. Fla. 2004)(citing *Tiffany* and other cases for the same proposition); *Punch Clock, Inc. v. Smart Software Dev*., 553 F. Supp. 2d 1353, 1357 (S.D. Fla. 2008)(same). Many courts look to the Copyright Act's analogous provision, 17 U.S.C. § 504(c), in

this situation. *See, e.g.*, *Tiffany*, 282 F. Supp. 2d at 125; *Louis Vuitton*, 211 F. Supp. 2d at 583; *Sara Lee Corp. v. Bags of N.Y., Inc.*, 36 F. Supp. 2d 161, 166 (S.D.N.Y. 1999).

Under the Copyright Act, courts consider factors such as: (1) "the expenses saved and the profits reaped;" (2) "the revenues lost by the plaintiff;" (3) "the value of the copyright;" (4) "the deterrent effect on others besides the defendant;" (5) "whether the defendant's conduct was innocent or willful;" (6) "whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced;" and (7) "the potential for discouraging the defendant." *Tiffany*, 282 F. Supp. 2d at 125 (quoting *Fitzgerald Pub. Co., Inc. V. Baylor Pub. Co.*, 807 F.2d 1110, 1117 (2d Cir. 1986)).

Nike has submitted no evidence with the instant motion concerning the expenses saved and profits reaped by Defendants or its revenues lost. However, "[t]he statutory damages provision was added in 1995 because 'counterfeiters' records are frequently nonexistent, inadequate, or deceptively kept . . . ." *Tiffany*, 282 F. Supp. 2d at 124 (quoting S. Rep. No. 104-177, at 10 (1995)). Because Defendants have failed to respond to Nike's complaint or the instant motion, an actual damages calculation "is extremely difficult if not impossible." *Id.*

Nike's well-pleaded allegations and evidence establish that Defendants continued to offer infringing products for sale after Nike's counsel sent them a Cease and Desist letter. Given these facts, considered with the circumstances as a whole alleged in the complaint and established by the declarations filed in support of the motion for a default judgment, I recommend the Court award statutory damages in the amount of $60,000.00, plus post-judgment interest pursuant to 28 U.S.C. § 1961(a).

## IV.    INJUNCTIVE RELIEF.

In addition, Nike seeks permanent injunctive relief. In addition to § 43(c) of the Lanham Act, discussed *supra*, 15 U.S.C. § 1116(a) provides, in relevant part, that "[t]he several courts vested with jurisdiction of civil actions arising under this chapter shall have power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable."

A plaintiff seeking a permanent injunction must demonstrate that (1) it has suffered in irreparable injury; (2) remedies at law, such as monetary damages, are inadequate to compensate for that injury; (3) considering the balance of the hardships between plaintiff and defendants, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. *See eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 390-92 (2006).

In *eBay*, the Supreme Court rejected a "general rule" that either presumed irreparable injury or categorically denied it in patent cases. *See id. at 393-94.* In *Axiom Worldwide,* the Eleventh Circuit declined to decide whether a presumption of irreparable injury in a trademark infringement case "is the equivalent of the categorical rules rejected by the [Supreme] Court in *eBay*." 522 F.3d at 1228. However, that case is distinguishable from the one at bar.

In *Axiom Worldwide*, the Eleventh Circuit confronted the relatively unique circumstance of trademark infringement arising from a defendant's use of the plaintiff's trademarks in meta tags on its website, which meta tags were not displayed to visitors to the website. *Id.* at 1216-17. In analyzing whether defendant was entitled to a preliminary injunction, the Eleventh Circuit acknowledged that its "prior cases do extend a presumption of irreparable harm once a plaintiff establishes a likelihood of success on the merits of a trademark infringement claim." *Id.* at 1227. The court declined to resolve the issue of whether the presumption would be sufficient to establish

irreparable harm in light of *eBay*, instead remanding the case to the district court to determine whether irreparable harm was shown without reliance on the presumption, among other things. *Id.* at 1228.

Accordingly, I examine the well-pleaded allegations of the complaint admitted by Defendants and the evidence presented by Nike to determine whether irreparable harm has been shown without reliance on the presumption. Defendants admit the following well-pleaded allegations of the complaint:

- Nike uses its marks "as trademarks of Nike's high-quality products." Doc. No. 1 ¶ 5a.
- "Each of the distinctive trademarks signifies to the purchaser that the product originates exclusively with Nike and is manufactured to standards of the highest quality. . . . As a result, Nike has established further goodwill in the Nike Trademarks, which have become valuable assets of Nike." *Id.* ¶ 11.
- "Nike has spent significant sums of money advertising and marketing products and services featuring its trademarked properties, creating a consumer demand for such products and services throughout the United States. Consequently, these products and services have become widely known and accepted." *Id.* ¶ 37.
- "The sale of Counterfeit Products, which are of an inferior quality to the authorized and authentic product, will further dilute the goodwill and reputation of Nike." *Id.* ¶ 30.

These facts establish that Nike has developed goodwill among the consuming public which would be undermined if Defendants are not prohibited from selling merchandise bearing Nike's marks, thereby creating a likelihood that the public would be confused about the origin of merchandise, particularly when the merchandise was not manufactured to Nike's quality standards.

Further, as discussed above, Defendants willfully infringed Nike's protected marks. Defendants' actual use of protected marks demonstrate a likelihood that Defendants would likely continue to harm Nike's trademarks if this Court declined to issue an injunction. The immediate, ongoing violation of Nike's right to exclude third parties from using their protected trademarks is not compensable through monetary remedies, *see eBay*, 547 U.S. at 394-95 (Roberts, C.J., concurring), and is sufficient evidence of irreparable harm.

The hardship to Nike if sales of the infringing goods are not enjoined as been discussed above. The only harm to Defendants as a result of the injunction is that they will be precluded from selling merchandise that infringes Nike's marks. As such, the balance of the hardships favors issuance of the injunction.

An injunction would serve the public interest by protecting consumers from being misled and confused as to the source of Defendants' unauthorized merchandise bearing Nike's Trademarks. *See BellSouth Adver. & Publ'g Corp. v. Real Color Pages, Inc.*, 792 F. Supp. 775, 785 (M.D. Fla. 1991)("In a trademark infringement or unfair competition case, a third party, the consuming public, is present and its interests are paramount.") (citing *Sundor Brands, Inc. v. Borden, Inc.*, 653 F.Supp. 86, 93 (M.D. Fla. 1986)).

Because the factors under Fed. R. Civ. P. 65 favor entry of a permanent injunction, I recommend that the Court grant Nike's request for issuance of a permanent injunction in a form approved by the Court.

## V. RECOMMENDATION.

For the foregoing reasons, I hereby recommend that the Court **GRANT** the motion for default judgment against Defendants, jointly and severally, and award statutory damages in the amount of

-11-

$60,000.00, plus post-judgment interest pursuant to 28 U.S.C. § 1961(a), and **ENTER** a permanent injunction in a form approved by the Court. I further recommend that the Court direct the Clerk of Court to enter a judgment consistent with its order on this Report and Recommendation and, thereafter, to close the file.

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on October 8, 2009.

*Karla R. Spaulding*
KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE